**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| DORI L. COFFEY, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:04-CV-0902-Y |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A. STATEMENT OF THE CASE

Plaintiff Dori L. Coffey brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Coffey applied for SSI benefits on November 1, 2002 (her protective filing date) and disability insurance benefits on December 3, 2002, alleging she has been disabled since August 15, 2002. (Tr. 103, 234). Coffey met the requirements for disability insured status through the date of the administrative decision. (Tr. 54).

After the Social Security Administration denied her applications for benefits initially and on reconsideration, Coffey requested a hearing before an administrative law judge (the "ALJ"), and ALJ Randolph D. Mason held a hearing on February 2, 2004 in Fort Worth, Texas. (Tr. 28-53). Coffey was represented by counsel. On February 27, 2004, the ALJ issued a decision that Coffey was not disabled because she retained the residual functional capacity for a modified range of sedentary work. (Tr. 19-27). The Appeals Council denied Coffey's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 2**

*Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 3**

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

    1.    Whether the ALJ erred in failing to recontact a treating medical source;

    2.    Whether the ALJ should have obtained the services of a medical expert;

    4.    Whether the ALJ considered the combined effect of all of Coffey's impairments; and

    5.    Whether the ALJ erred in finding that Coffey could work on a full-time basis.

D.  ADMINISTRATIVE RECORD

    1.    Treatment History

Coffey was in a motor vehicle accident on August 15, 2002. She was taken to a local emergency room for evaluation of complaints of neck pain. (Tr. 151, 193). Diagnostic studies revealed previous surgery at C3-C6; severe spondylotic[1] changes with prominent spurring impinging on the thecal sac, worse at C3-C4; degenerative changes at C3-C4 and C4-C5; and a residual flattening of the cervical spinal cord from C3 to C5. (Tr. 161, 164, 168, 171-72, 194). Treating neurosurgeon George Cravens, M.D., opined that Coffey was not a surgical candidate, (Tr. 193), and she was discharged on August 31, 2002 in stable condition.

Cravens evaluated Coffey on October 7, 2002. (Tr. 191). Coffey complained of numbness and a dead feeling in her wrist and hand, and numbness in her mid-abdominal area. She was

---

[1] Spondylosis is a general term for degenerative spinal changes due to osteoarthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1684 (29th ed. 2000).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 4**

ambulatory and was able to walk and use her hands without difficulty. (Tr. 191). On examination Coffey exhibited hyperactive reflexes in all extremities. Cravens recommended conservative treatment. He was unsure that all of Coffey's paresthesias[2] would resolve, but thought that her condition would improve over time with medication and physical therapy. (Tr. 191).

Coffey returned five months later, on March 3, 2003, with complaints of bilateral hand numbness. She was unable to afford physical therapy and her prescription medication had provided no relief. (Tr. 188). Cravens opined that Coffey's condition was best managed conservatively because her condition had stabilized. (Tr. 190).

Coffey also sought treatment from Lloyd Kent Weldon, D.O., for management of her prescription medications. In January 2003, Coffey complained that her back and hands were painful, but she was doing okay with her medications; however, she requested an antidepressant because she was feeling depressed. (Tr. 200). At a checkup on February 5, 2003, Coffey reported that she was attending physical therapy and rated her pain, with medication, as a level three on a scale of ten. (Tr. 199). In March 2003, Coffey reported that her pain was a level four on a scale of ten when she took her medication. (Tr. 198). She had been advised that she had spinal cord damage and was awaiting a referral from Craven's office for another magnetic resonance imaging (MRI) scan. Coffey reported that she was working part-time cleaning houses. Weldon observed unspecified swelling, which he attributed to nerve damage. (Tr. 198).

Coffey saw Cravens again on January 19, 2004. Coffey complained of numbness in her

---

[2] Paresthesia is an abnormal touch sensation, such as burning, prickling or formication. DORLAND at 1324.

**Findings, Conclusions and Recommendation of  
the United States Magistrate Judge–Page 5**

abdomen and legs and increasingly frequent falls. (Tr. 216). She continued to experience neck pain and was unable to use her hands for typing or picking up things due to a loss of feeling and constant pain in both hands. Coffey exhibited hyperactive, but symmetric reflexes; one or two beats of clonus[3] bilaterally; and diffuse weakness in all extremities. Cravens observed a patchy loss of sensation across Coffey's abdomen and in her lower extremities, and Coffey demonstrated decreased sensation in her hands bilaterally. (Tr. 216).

Cravens noted that an MRI study showed significant cervical cord stenosis at C5-C6 with severe indentation of the spinal cord and "pancaking" of the spinal cord at C4. Cravens diagnosed spinal cord syndrome with significant stenosis, and noted that Coffey's symptoms continued to worsen. Cravens opined that surgical intervention was almost definitely required and advised Coffey to avoid work and take extra precautions with activity. (Tr. 216-17).

Weldon issued a statement in January 2004 indicating that Coffey was unable to engage in gainful employment because of her cervical condition and a recent diagnosis of hepatitis C.[4] (Tr. 220). Weldon also reported that Coffey was diagnosed with reflex sympathetic dystrophy (RSD) in her upper extremities.[5] (Tr. 220).

---

[3] Clonus refers to alternate muscular contraction and relaxation in rapid succession, or a continuous rhythmic reflex tremor initiated by the spinal cord below an area of spinal injury and set in motion by reflex testing. *Id.* at 365.

[4] Hepatitis is an inflammation of the liver. *Id.* at 807. Hepatitis C is a viral disease, and is the most common form of post-transfusion hepatitis. Chronic infection is generally mild and asymptomatic, but cirrhosis may occur. *Id.* at 808.

[5] Reflex sympathetic dystrophy is a series of changes caused by the sympathetic nervous system, marked by pallor or redness, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels. *Id.* at 560.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 6**

2. Administrative Hearing

Coffey was born April 3, 1956. She completed high school and three years of college. (Tr. 30). She testified that she was working thirteen to twenty hours per week as a housekeeper and earned approximately $480 per month, (Tr. 31, 35), but testified that she worked for family friends who tolerated her need for frequent breaks while working. (Tr. 41). She previously worked as a legal assistant and secretary, but testified that she could not return to that work because she was no longer able to type. (Tr. 35).

Coffey testified that she was able to write, but had difficulty buttoning her clothes. (Tr. 36). She could drive short distances. Walking was difficult because of muscle spasms and pain, especially in her left leg. Coffey testified that she had difficulty lifting a gallon of milk. (Tr. 39). Coffey had undergone neck surgery about ten years earlier, and anticipated having additional neck surgery recommended by her neurosurgeon. (Tr. 40-41). Coffey testified that she laid down frequently when she was not working. (Tr. 43).

Coffey's daughter, Leah Shockley, testified that her mother changed after the car accident. Shockley described her mother as depressed, stressed, and constantly in pain. (Tr. 44).

Vocational expert Dillon Snowden testified that Coffey's previous work as a legal secretary was sedentary, skilled work. Work as a home or office cleaner was considered unskilled work that required light or medium exertion. (Tr. 45-47).

The ALJ asked Snowden to consider the following hypothetical:

> An individual who has a high school educations plus three years of college. The past work as you have described. Only I would not include the housekeeping, cleaning positions in the past work. She's been doing that since the onset date, and assume

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 7**

>past work as you have described. And the individual would have been 46 years of age in the time of question. With the residual functional capacity for only sedentary work, meaning frequent opportunities to sit or stand throughout the workday. No constant repetition of the same motion of the hands, and no fine manipulation with the hands. Would such an individual be capable of performing any of the past work?

(Tr. 48-49). Snowden testified that Coffey's previous work would not be suitable, but Coffey would have skills transferable to other jobs in the national economy, including work as an information clerk. (Tr. 49). There were also suitable unskilled jobs, including bench inspector and surveillance system monitor. (Tr. 50). Snowden testified that work as a bench inspector would be compromised if the worker's ability to use her hands was unpredictable. Customary workplace tolerances would permit no more than two or three absences from work each month. (Tr. 50-51). A worker who needed an unusual number of breaks would also be unable to maintain competitive employment. (Tr. 51).

      3.     ALJ Decision

The ALJ found that Coffey's cervical degenerative disc disease constituted a severe impairment, but was not severe enough to meet or medically equal a listed impairment. (Tr. 21). The ALJ also found that Coffey's current employment was indicative of an ability to engage in substantial gainful activity. (Tr. 25). After reviewing the medical records and Coffey's subjective complaints, the ALJ found that Coffey retained the residual functional capacity for sedentary work that offered frequent opportunities to alternate between sitting and standing and did not require continuous repetition of hand movements or fine manipulation. (Tr. 26). The ALJ accepted the vocational expert's testimony and found that Coffey was capable of performing other work existing in significant numbers in the national economy. (Tr. 26). Accordingly, the ALJ concluded that

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

Coffey was not disabled and was not entitled disability insurance or SSI benefits. (Tr. 26-27).

  4.  Appeals Council Evidence

In October 2004, approximately eight months after the ALJ issued his decision,[6] Weldon completed a medical assessment of Coffey's ability to do work-related activities. (Tr. 277). Weldon reported that Coffey could lift or carry no more than five pounds; stand or walk less than two hours in an eight-hour workday; and sit for less than four hours per workday. (Tr. 277). Coffey could never climb, stoop, crouch, kneel, or crawl, and was limited in her ability to reach, handle, finger items, push or pull. Weldon advised that Coffey should avoid moving machinery, temperature extremes, dust, fumes, chemical exposure, and vibration. Weldon attributed his opinions to Coffey's cervical condition, reflex sympathetic dystrophy, and hepatitis C. (Tr. 277).

D.  DISCUSSION

  1.  Medical Source Opinions

Coffey asserts that the ALJ erred in rejecting Weldon's January 2004 disability opinion without recontacting Weldon for clarification of the basis for his opinion that Coffey was unable to work.

The ALJ has a duty to develop the facts fully and fairly, and if he does not satisfy this duty, his decision is not substantially justified. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). If an ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, and absent other

---

[6] Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the decision complained of is based. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician. *Newton*, 209 F.3d at 457-58. *See also* 20 C.F.R. § 404.1512(e); Social Security Ruling 96-5p. The failure to request additional information from treating or examining sources is reversible error if prejudicial. The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Newton*, 209 F.3d at 458.

Coffey argues that the prejudice from a failure to recontact Weldon is apparent because Weldon, when requested by counsel, prepared a more detailed written assessment that establishes Coffey's inability to perform full-time work at any level of exertion. But what Coffey fails to demonstrate is that the state of the record at the time the ALJ rendered his decision should have alerted the ALJ that additional inquiry was needed.

The ALJ must carefully consider medical source opinions about any issue, but treating source opinions about a patient's inability to work are opinions on issues reserved to the Commissioner, and as such, are never entitled to controlling weight or special significance. 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling 96-5p. The ALJ considered the opinion evidence submitted in Coffey's case, but noted that treating physician Cravens had recommended conservative treatment measures after Coffey's motor vehicle accident. (Tr. 24). He also found Weldon's opinion that his patient was unable to work was suspect in light of Coffey's continued work activity. (Tr. 24). There is no indication that the ALJ found the medical records before him to be inconclusive or inadequate, and a review of Coffey's treatment history reveals no notable gaps or ambiguities in the record that should have put the ALJ on notice that supplemental information

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

might be needed before a decision could be reached. Coffey fails to demonstrate that the ALJ committed legal error in failing to recontact Weldon before reaching an unfavorable disability decision.

Coffey also contends that the ALJ assigned undue weight to the reports of the state agency medical consultants and failed to explain why these reports deserved greater weight than the opinions offered by treating sources. The findings made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p. The state agency medical consultants found that Coffey could lift up to twenty pounds, stand or walk for up to six hours during a standard eight-hour workday, and sit for six hours per workday. The ALJ considered the state agency assessments and found the reports supported his determination that Coffey could perform some level of work activity, although he eventually found Coffey more restricted than the state agency medical consultants had reported. (Tr. 24). The ALJ also explained in his decision that he found disability opinions from Coffey's treating sources were inconsistent with evidence that Coffey continued to clean houses and offices on a part-time basis.

Coffey has shown no error or lack of substantial evidence to support the ALJ's evaluation of the opinions offered by treating physicians or the state agency physicians who reviewed her

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

applications at earlier stages of the administrative process.

    2.    Medical Expert

Coffey asserts that the ALJ's determination that her condition does not meet or equal a listing is unsupported by substantial evidence because the ALJ failed to obtain the services of a medical expert.

An ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments. *Richardson v. Perales,* 402 U.S. 389, 408, 91 S.Ct. 1420, 1430-1431, 28 L.Ed.2d 842 (1971). A medical adviser is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected therein, and expresses expert opinions as to the nature and severity of impairments and whether impairments equal the requirements of any impairment listed in Appendix 1 following the relevant disability regulations. *See generally* 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii) (2004). When a medical professional functions as an expert witness in the course of an evidentiary hearing before an administrative law judge, Social Security Ruling 96-6p designates the professional as a medical expert. *See* Social Security Ruling 96-6p.

But the use of a medical expert is generally discretionary with the ALJ. *See Richardson*, 402 U.S. at 408. The ALJ must utilize a medical advisor only in certain instances, i.e., when it is unclear whether a claimant's impairments are equivalent in severity to a listed impairment or when establishing the onset date of disability for slowly progressive impairments. *See Spellman v. Shalala*, 1 F.3d 357, 360-63 (5th Cir. 1993); *Haywood v. Sullivan,* 888 F.2d 1463, 1467 (5th Cir. 1989). *See also* Social Security Ruling 96-6p. Although internal administrative policy requires the judgment

of a physician on the issue of equivalence, this requirement is satisfied by the signature of a state agency medical consultant on the approved disability determination and transmittal form. Social Security Ruling 96-6p. Coffey's case was reviewed by two state agency medical consultants, who completed the requisite forms. (Tr. 56-57). Accordingly, the ALJ was not required to retain further medical expert assistance.[7]

    3.    Combined Impairments

Coffey complains that the ALJ erred in failing to consider the combined effect of her impairments. In particular, Coffey asserts that the ALJ should have recognized RSD as a severe impairment and should have considered the existence of a mental impairment as a possible explanation for her low pain tolerance.

The ALJ found only one severe impairment, cervical degenerative disc disease, but recognized his duty to consider all medically determinable impairments in addressing the remaining steps of the sequential evaluation process. (Tr. 20-21). He also acknowledged his duty to consider all of the claimant's symptoms in assessing her residual functional capacity. (Tr. 21).

The ALJ noted that Coffey was diagnosed with RSD, which is a chronic pain syndrome that the Commissioner recognizes as a medically determinable impairment. Social Security Ruling 03-2p. However, the ALJ ultimately found that Coffey's pain complaints and other symptom–without

---

[7] Social Security Ruling 96-6p clarifies that the ALJ must seek the opinion of a medical advisor if (1) the ALJ concludes that the claimant does not meet the specific criteria outlined in the Listings but reasonably believes claimant's impairments may be judged equivalent, or (2) the ALJ receives additional medical evidence that he believes may change the state agency medical or psychological consultant's findings that the impairments are not equivalent in severity to any impairments in the Listings. Social Security Ruling 96-6p. There is no indication in the ALJ's decision that he believed either of these circumstances existed.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 13**

regard to their source–were not disabling, particularly in light of her ability to work part-time as a housekeeper. The ALJ also noted that Coffey reported a pain level of four when she used her medication. (Tr. 23). The ALJ accommodated Coffey's symptoms and complaints by limiting her to sedentary work that afforded a sit/stand option and avoided repetitious hand motions and fine manipulation tasks. (Tr. 23). Coffey has not demonstrated that the ALJ failed to consider all of her medically determinable physical impairments in assessing her disability claims.

As for Coffey's assertions of a mental impairment, the record does not reasonably alert the adjudicator that there could be a mental source for Coffey's pain complaints. There are brief references to depression and anxiety complaints in the record, but Coffey did not assert at the hearing level or in her request for review to the Appeals Council that any mental impairments hindered her ability to work or lowered her pain tolerance. Nor did her treating physicians suggest that Coffey's symptoms were attributable to mental or emotional reasons. Coffey's new speculation that there could be a mental component to her assertions of disability does not present a basis for disturbing the decision of the Commissioner.

4.      Sustained and Full-Time Employment

The ALJ expressly found that Coffey could perform a modified range of sedentary work activity on a sustained and full-time basis. (Tr. 24). Coffey asserts that the ALJ erred in relying on her part-time work as a housekeeper as evidence of her full-time work ability.

The regulations provide that work done during any period in which a claimant alleges disability may show that the claimant is able to engage in substantial gainful activity even if the actual work done is not substantial gainful activity. 20 C.F.R. §§ 404.1571, 416.971. The

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 14**

Commissioner considers all of the medical and vocational evidence together in deciding whether the claimant has the ability to engage in substantial gainful activity. *Id*. §§ 404.1571, 416.971. The ALJ did not err by including Coffey's part-time work as a factor in his disability decision.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 23, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 15**

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 23, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED AUGUST 2, 2005.

/s/ Charles Bleil

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE